May it please the court, my name is Walter W. Moore. I'm the attorney for the plaintiffs and the appellants. I'd like to reserve three minutes for rebuttal, if I may. We've explained in our brief why Safeco's case fails as a matter of law based on undisputed facts. Today, in my seven minutes, I'd like to zero in on four issues. Issue number one is the purported $10,000 limit. California's insurance code at sections 101.01 through 101.03 expressly requires that for a residential insurance policy you must state the limits on the declarations page. California's Supreme Court, in the Haynes v. Farmer insurance case, established that if an insurance company wants to lower any limit, it was a car policy in that case, the insurance company must give clear, plain, and conspicuous notice. Let's apply it to the documents that are undisputedly... Let me ask you before you get there, let's go back historically. Would you agree that in 1999 there was a clear total exclusion of mold and fungus? No, I would not agree to that at all. Even though the policy expressly stated that with no exception. This is why we get into the difference between perils and loss. What the policy said in the old section C exclusion was that mold and fungus is excluded as a peril. That is what it said after the amendment as well in the new section 11. It has always been excluded as a peril. It has always been covered as a loss resulting from a covered peril. In this case... I'm looking at the policy and it says building property losses we do not cover. We do not cover loss directly or indirectly caused by any of the following perils. There is a tie between losses and perils there. Exactly. It's like the difference between a match and a fire. The peril is what triggers the loss. And Safeco, even if your honor, we're just looking at that in a vacuum. Under California law, we don't just look at it as lawyers. We look at how the parties themselves interpreted the policy. And here Safeco has always interpreted its policy as counsel admitted at the hearing. It's always interpreted its policy as covering fungus as a loss when? When it results from a covered peril. And that is why in December you have Mr. Hardy from October to December looking to see what caused the fungus. He came up with one pretext after another and he eventually admitted that it was a covered loss. If your honor's interpretation were correct, they would never have to go any further than day one. But what would be excluded? What kind of fungus situation would be excluded under the 1999 policy? that the loss resulted from a peril that is excluded. We must not just look at the policy. You have to look at the part under California. I guess I don't understand what the purpose of 6C was. Because if you're saying if it was caused by a slow drip, which is not a covered peril or loss or event or occurrence, it wouldn't be covered anyway, whether it's mold or other kinds of things. Well, perhaps there are other ways fungus can occur that I don't know about. What I do know, however, is that Safeco showed by its conduct and by its internal documents that it is always and by its counsel's correct admission at oral argument that the policy covers fungus loss when it results from a covered peril. Otherwise, the day they showed up and saw that this was fungus, they would have said, oh, didn't you know? You're excluded. You never get coverage for fungus. Plus, if your honor will look at the amendment, the one they rely on, it says this $10,000 of coverage only applies if the fungus results from a covered loss. And the new exclusion 11 also says you're only covered if you're covered. It's circular, in a sense, if you look at those two documents. But Safeco, through its conduct, showed they interpret it as applying to fungus. What, then, is the effect of the 2002 change in policy in which the notice stated that we are providing $10,000 of additional? What's the effect of that relative to the 99 policy? The effect is just as Mr. Hardy interpreted it before a dispute arose. It provides an additional $10,000 not for repair or replacement of the dwelling, which is covered under Section 1A that deals with repair or replacement. Rather, this was an additional $10,000 under a subsequent section called Additional Policy Coverage that covers things like shrubs, that covers things like reimbursing the fire department. This deals with, for example, remediation by digging up the soil. What about the special provision section that actually said, again, building property losses we do not cover? And the first thing it says is fungi, wet, dry rot, etc. That's what it said before. They have not shown that up until, well, actually, they've never shown that Safeco has ever taken the position that a fungus loss is always excluded. And, in fact, the case that the district court cited, DeBruin, shows how an insurance company has to and can explain that fungus loss is never covered. It's very simple. You say no matter what, fungus loss is never covered. We don't care what causes it. That's not what Safeco did. Safeco here said you're getting an additional $10,000 of coverage for covered fungus loss. Your Honor's interpretation would require viewing that language as surplusage. And that's the problem. And that's why under California law, we don't just look as lawyers at the fine print. We instead look at how a layman would read it. And here, here you don't have the case where an insured is trying to pound a round peg into a square hole. Safeco itself interpreted the policy as providing an extra $10,000, not just through its words, but through its conduct, through its practical construction. Because, remember, in November Are there any evidence that this has been Safeco's practice and policy apart from this particular loss suffered by your client? The short answer would be no. We asked for it in discovery and Safeco said, oh, we've never sent out any memoranda. We've never communicated with anyone else. The only thing we have is privilege. So the only evidence in the record of Safeco's behavior before a dispute arises is Mr. Hardy knowing in November, he knew in November, that the cost would exceed $10,000. He didn't just write a check for $10,000 on December 22nd. But we're talking, I'm asking whether there's any evidence, any parallel evidence other than this one instance with this one adjuster. And whether there's a policy or any other statements that would have rendered perhaps ambiguous, what seems to me, fairly clear language. In the record, no. But bear in mind, Safeco never made this argument until its answering brief on this appeal. That's the first time it claimed, oh, it was excluded before. Had they made this argument earlier, I would have introduced evidence, including their own letters to the Department of Insurance, where they said, hey, we're paying out millions on mold and fungus claims, and that's why we need to amend the policy. So it's not fair to us to let them argue for the first time on appeal that, oh, fungus was excluded before and is excluded now. Fungus was always covered. They've never disputed that until this appeal, and it's their burden to try to explain away the unambiguous, extrinsic evidence, Safeco's own writings and its conduct, its practical interpretation of the policy, is that fungus is, of course, covered. Or Safeco wouldn't have been struggling to try to figure some cause for the fungus. It would have only, with Your Honor's interpretation, which I can understand on a first reading of the policy, all they would have to do is go, it's fungus. Goodbye. You're not covered. But instead they dragged it out for 57 days with one pretext after another. First they said, oh, the roof caused it, but their own roof inspector said, no, the roof's in good shape. But doesn't it make a difference what the cause was? Because you don't get the $10,000 exception or benefit if the cause isn't covered. They didn't give the required notice. They didn't keep it alive. They're also barred by promissory estoppel because when Mrs. Moore writes in January, let me get this straight, the $10,000 is just for remediation, right? How does Mr. Hardy respond? He responds by saying, yes. Five minutes later he says, yes, the $10,000 is for remediation. The rest is for repairs after, all caps, after remediation. Which could have been caused by water or mold damage. There's a reference in one of his letters saying cause of loss in the January 14th letter was water and mold. So then regardless of the mold, that extra coverage for the $8,000 or $9,000 that was paid, arguably that could have been attributable to water loss. Your Honor's question was, does the cause matter? And my point is, it did before they admitted coverage. But once they admit coverage, game over. You don't get a do-over. You don't get to come back and hire a second expert, who by the way is not licensed in this state, to contradict the first expert. Actually, I was getting to your promissory estoppel argument. And generally the law says that promise has to be pretty clear, crystal clear before you can rely on it. And you're citing, you know, Mr. Hardy's response. But part of his response seems to me somewhat ambiguous because he says, well, the cause of loss was water and mold. So maybe the $8,900 in his mind could have been attributable to the water portion. The promise must be clear, but it may be implied. And let's look at the other statements he made. In the December 22nd 2010 letter, he said, your policy provides replacement costs. And then he goes on to say, we understand there will be additional costs for remediation. I think that's a clear implied promise that they're paying for repairs and remediation. And then when Mrs. Moore sends him the email saying, look, before I even move furniture, I want to be clear about this, he doesn't say, well, we may change our mind later. We may do more investigation. Maybe it's something else. No, he says, that's correct. You get $10,000 for remediation and the repairs are subject to the limit. Now, is it reasonable at that point to think you have a promise to cover the repairs and to start the remediation process? Absolutely. And it would never have happened if he hadn't made that. What more is he supposed to say in that context? What else would the Moores need to ask him other than, let me get this straight, the $10,000 is for remediation, not repairs after? The court needs to look at everything he said in the context. And his own work plan provides his subjective intent. He didn't say, we're going to reserve the decision. He said, notify his work plan on December 21st, I believe, was notify the insured of our final decision after getting the word from the fungus expert. He was waiting to find out if the fungus testing showed that this was something that popped up overnight. He wasn't hedging. That was make or break. They completed their investigation in an untimely fashion and decided, okay, you're covered. And their own chief claims examiner said that in an internal memo. He says, looks like coverage has been admitted. So how could a jury conclude any differently? Counsel, we've taken you well over your time. I'm going to allow you two minutes for rebuttal, even though you've exceeded your time.  Good morning, Your Honor. Frank Falzetta for Applebee's Safeco Insurance Company of America. Thank you. Let me go back to the first series of questions you asked. And that was, what was the 99 form versus the fungus exclusion and give back of coverage in the special provisions that started in 2002? Mr. Moore keeps saying that Safeco has always admitted that mold was covered, whether it was the prior form or under the special provisions for a fungus. That's simply not the case. And what Mr. Moore cites in his brief is a back and forth between Judge Gee and Mr. Crow of my office regarding whether the mold would be covered if it was caused by a covered peril. That entire discussion took place around the special provisions. Why? Because Mr. Moore below, in his renewed summary judgment motions that occurred after his first motion was denied, never raised adequacy of notice regarding the special provisions, never raised adequacy of notice about the notice or anything else. So we were all working under the assumption that we were talking about the policy as amended and supplemented by the 2002 and 2005 renewal packages that included the special provisions rate fungus. Those provisions clearly say that you have an absolute mold exclusion unless the give back of coverage for mold kicks in. And that give back of coverage for mold or fungus kicks in only if the mold results from an otherwise covered cause of loss or peril. So of course it was important to know that. And of course we said under the current policy form with the special provisions that are clear, conspicuous, and plain that you must show you don't just get mold coverage. You must show that the mold, which is itself a peril, because the mold does things like the porya did, eats wood, that the mold had to be caused by an otherwise covered peril or loss. So the search by Mr. Hardy and Mr. Bowles and all of the people they hired, the search was under the current form, which they informed the Moores of two times before the loss, Safeco did, and then five or six times afterward, informed them of the $10,000 supplement for fungus. The search was about finding the purported covered peril that caused the fungus to grow and eat members, the wood members of the house. Because if it wasn't a covered water source, then the fungus wasn't covered even under the special provisions. It was absolutely barred. In fact, that's what happened here and I'll get to that in a minute. But in any event, anything caused by mold is going to be subject to $10,000 limit. No question. So that damage, and whether it's remediation, removal, or repair thereafter, the special provision makes it clear, or your cost of living somewhere else while the remediation occurs. So if you have a flood, if you have a broken pipe or something else that is a clear water source, if that causes mold, the limitation on the mold, on your mold damages, is still going to be capped at $10,000. Correct. But we're going to pay for the water damage if the water damage isn't an excluded cause of loss or peril. So in other words, we'll pay for the water damage if it's an accidental discharge. We'll pay for the water damage. And then as to the mold that results from that water damage, if it does, whatever damage is caused by that mold, limited to $10,000. Anything relating to that mold damage is limited to $10,000. And that's important because it drove what Hardy told the Moores. What he believed, erroneously, we now know because of the litigation, what he believed is that there were two losses here, two types of damage. One caused merely by water, and another caused by this strange mold that caused damage to the home as well. And he believed he was paying for two things, as he must, even under the special provisions. Does that explain why his letter suggests, well, you get the $10,000 mold coverage, but after remediation you also get the $8,900 or whatever it costs? Exactly right. Exactly right. Because what came back to him was, hey, there's a wetness. We see wetness, cupping floors, other things just caused by water. And if that's a covered cause, water source, peril, then we have that water damage independent of whatever damage the fungus did. The facts as he knew them at the time suggested there were two losses. And he said that repeatedly in his communications to Mrs. Moore. He said, here's the $8,900 less deductible, $8,700 for the water, and then you have up to $10,000 for all the mold damage. I'm not sure he made it so clear that this was for water damage. Well, he did, Your Honor. Which e-mail or letter are you pointing to? If you wouldn't mind, I'll grab my binder. I know on January 14th he references the cause as being both water and mold. That's right. Is that what you're referring to? Excerpt of Record 949. Yeah. Right. He says it even more. Yeah, the cause of loss was water and mold, but it's OK. But he said it even more clearly. It's either in a claim note or in correspondence that the $8,900 and he does in the 122210 letter, he does the calculation. The 8702 payment of your claim, and here's what it's for. And that's the water part. And then he says, then you'll do an estimate of your property. And then the next page, we understand there will be additional costs relating to mold radiation. Please remember, that's only up to $10,000. And even when – I forget which other letter it is, but there is another one. He always made this distinction between water and mold, and that was appropriate. Where in that December 22nd letter does he reference water? Yeah, I'm reading it quickly here, Your Honor. I'm not finding it as I speak, but I know it was in a note. He made it clear what he was doing. The $8,900, yeah, $10,000 for mold, $8,900 cause of water and mold. I'm not finding it, unfortunately, Your Honor, at the moment, but I will continue to look for it. I do see in the record there is the actual attachment of the estimates from Safeco. It looks at each room. Right. One was for cupping of the floors and remedying the water damage. And that's the estimates came back for fixing that stuff, and that's what led to the $8,900. Can you tell whether this is for repairing things that were open in order to get at the mold, or was it caused by water damage? That hadn't happened yet. There hadn't been any opening of the walls. That happened in January when they hired their own mold remediation company, and they opened up the walls. And then they realized how extensive the mold damage was. That's the first time. Mr. Hardy didn't know that at the time. Not even the industrial hygienist who went out there from Forensic Analytical knew that. She couldn't get under the crawl space. She didn't know. Nobody knew. So this estimate really was for water damage then. It was. And he said, and you've got $10,000 more for mold. Let's see how extensive it is. And nobody knew. But that's a critical point, because that means that he didn't intend to convey to them that they would ever get more than the $10,000 for the mold. It's inconsistent with the special provisions, which are clear and conspicuous. It's not consistent with anything any other expert said. And the sort of oh-by-the-way of all of this is that, in retrospect, this entire loss was uncovered, no matter which form you look at, because poria is a unique fungus. It's unique because it does something that most funguses can't and don't do. What it does is it's a water transporter. It has these rhizomorphs that it starts in one place with a root ball, and then it keeps growing and it transports its own water. It has to have a steady, consistent source of water, and it transports its own water into the structure, and then it wets the wood members so it can consume them, the cellulose. And that's what creates the energy to feed the mold. Other molds don't do that. So this plant, this kind of mold, needs a continuous source of groundwater or other water source, a continuous source of water seeping, leaking, either in the ground, from watering, from a fountain, doesn't matter where, but a sudden accidental discharge down a cut vent pipe would never allow this poria to do what it did, never. And that's what our unrebutted testimony of our expert, Dr. Dietz, testified to, and there's no evidence to the contrary in this record, not one. Poria is unique. Poria needed a constant water source. That constant water source, that seepage leakage, is an excluded peril. So as it turns out, Mr. Hardy's misconception about the nature of the damage and the perils that caused it actually inured to their benefit. They got coverage that they actually weren't entitled to. And if this case ever got reversed, we would still win on coverage under the prior form. What's your response to the argument that California law requires that any limitations and exclusions appear on the declarations page? My argument is 101.01 doesn't say that, and 101.03 doesn't say that. What it says is that you need to list the limits for the dwelling. It doesn't say you need to list every sublimit, and, in fact, old 101.03.5 used to make a reference to sublimits separate apart from limit, and there are many sublimits that don't appear on declarations pages, and they've been deemed perfectly fine. In fact, even the Haynes case, which the moors primarily relied upon, it doesn't say that it has to be on the decks page or else the sublimit isn't enforceable. The Haynes decision expressly said that isn't the reason why we're finding the farmer's sublimit for permissive users improper or inconspicuous. They noted that it would have been nice to be on the declarations page, but they disclaimed it in the sentence after the one they quote. And in addition to that, the appellate courts, the Estate of Murphy case, the Dominguez case, and many other cases uphold sublimits even though they're not on the declarations page. And the Estate of Murphy says they don't have to be. What it has to be is conspicuous, plain, and clear, and ours couldn't be clear. In the policy, not necessarily on the declarations, as long as it's plain and conspicuous and clear. Correct. Exactly. Because everything warns you that the declaration page is a mere summary, and reasonable insureds know that. That's what District Court Judge Gee said, and that's true. They understand that it's a summary and that you have to look to the specific terms of the policies and any endorsements or changes that come after to know what your sublimits are. There are numerous sublimits for personal property. Mrs. Moore knew them. She knew that her Persian rug and her jet ski had sublimits that were different than the limits stated on the decks page for personal property. People know that, and that's what the hand courts, the Estate of Murphy courts said as well. I guess I'm over time, but I appreciate your listening to my argument. Okay. Thank you, counsel. Mr. Moore. Go put two minutes on the clock, please. Counsel said we have the burden of showing the loss is covered. That is an incorrect statement of California law. They have the burden of showing it is excluded. Counsel admitted. Now they're taking the position that $10,000 loss is a limit that applies to repairs. Under the California insurance codes I cited, all you have to do is read them. For a dwelling insurance policy, not a car insurance policy like in Haines for a dwelling, you must state the limits for the dwelling on the declarations page. What about sublimits as opposed to this? There are lots of sublimits.  This is a limit for the dwelling. This is talking about repairs to the dwelling, not to bushes, not to the hypothetical jet ski, or to the other property. The essence of a homeowner's policy is insurance for the home, and that's why the code... What if there weren't even an exception? There were no sublimits, just straight exclusion as I believe there was back in 1999. Does that have to appear on a declarations page? No. The policy limits must, and that is why this is sneaky and unenforceable. Well, that's interesting. If it didn't have to appear in a declarations page, if you have a total exclusion, when you have a giveback and they add coverage to give you a benefit that gives you up to $10,000, now you have to enforce it, now you have to disclose the additional coverage on the declarations page? It is not a giveback. It is what they are claiming is that they're selling a policy limit, the declarations page, which said we had $651,000. And they're saying, oh, didn't you know if your house is wiped out by a fungus, that limit is actually $10,000 for repairs to the dwelling. Under California law, the limit for repairs to the dwelling must be on the declarations page. What I really want to address is this idea that, oh, there were two losses. There was a water loss and a fungus loss. That is baloney, and you can see that's baloney by looking at the remediation bid, which appears at 281 through 284 of the record, and the repairs estimate, 281 through 294. This was not a matter of, oh, there's water damage over here and fungus damage over here. Rather, what the evidence in the case shows, as opposed to the spin that occurred after the redacted meeting with the fourth claims adjuster, what the evidence shows is that Hardy always distinguished between remediation, removing the fungus, which is what the extra coverage was for, versus repairs after. Mr. Moore, do you dispute that what appears at starting at the excerpt of record page 935, which appears to be SACO's breakdown and estimate how they got to the $8,900, and it lists various things like the bathroom, the closet, et cetera, that that estimate was made before the mold was discovered? I absolutely dispute that. That the walls had already been opened up? That's a separate issue. No, the walls had not been opened up, but as the pictures we submitted show, this mold is coming up like their own expert said, the first one, who they're not now trying to impeach. It came up like a mushroom through the floor. It engulfed shoes. It engulfed a dresser. So what was these repairs for, to the half bath, for instance, replacing drywall? The repairs, the remediation means you have to tear out the wood. You have to excavate the soil. After you've done that, you've got bare studs. You've got bare wall studs. So all of this was in connection with remediation of the mold and not caused by water damage? That's three different questions, Your Honor. The repairs, the $8,900 was for repairs after remediation. The bid from ServPro for $5,000 was for remediation itself. All of this was one loss caused through their own investigation, they found, caused by water suddenly being released in this pipe in the closet. Now he says, oh, no expert could possibly believe a sudden release of water had it. Poria is special. They knew it was Poria in December. Rosales told them it was Poria. Now they're claiming, well, Rosales is wrong, and too bad the Moors tore up their house in reliance on what we told them. This Court can allow that to happen. They don't give the limit as required by law in the declarations page. This idea that there were two separate losses is a fiction not supported by the record. Look at the estimate and the bid. The distinction was between remediation and subsequent repairs. It was never about, oh, there's a water loss over here and a fungus loss over there. And as for the little one-liners on the claims form, if you look at the document he's talking about, it shows the loss was from fire. If you've read the writings of Joshua Hardy, you know grammar was not his strong point and accuracy was not his strong point. This wasn't a fire loss. It was a covered loss, and the only evidence in the record shows before the dispute arose, and that's the strongest evidence of contractual interpretation, Safeco interpreted its policy as covering fungus loss resulting from a covered peril. At the end he talks about Haynes. Haynes was a car policy. Here we have the specific insurance code statutes that apply to homeowner's policy. So even if in Haynes a car policy doesn't have to have limits on the declarations page, a homeowner's policy must. Read the statute. It's not a matter for argument. Thank you so much for giving us so much time. Thank you, counsel. We thank both counsel for the argument. I think we're set. Counsel, thank you very much.
judges: Chen, Gould, Bybee